ISAAC HARRIS v. THE STATE.

No. 2621. Decided October 22, 1913.

**1.—Theft of Hog—Change of Venue—Appearance Bond—Jurisdiction.**

Where, upon trial of theft of a hog, the venue was changed from R. to W. County, and defendant was on bond at the time, but was not placed under a recognizance in said R. County when the change of venue was ordered to said W. County, the latter county, under article 637, Revised Code Criminal Procedure, had no jurisdiction. Following State v. Butler, 38 Texas, 560; Prendergast, Presiding Judge, dissenting.

**2.—Same—Evidence—Reproduction of Testimony—Stenographer's Notes.**

Where, upon trial of theft of a hog, it was shown that defendant's father, who was an important witness for the defense, was unable to attend court or to testify if he had, and that he had testified at a former trial to material facts for the defendant, it was reversible error not to permit defendant to reproduce the testimony of the said witness by another witness, and this, although the stenographer's notes of said testimony might have been used.

**3.—Same—Rule Stated—Reproduction of Testimony—Witness.**

If the witness offered can testify to the material facts in the case substantially as the absent witness testified, without giving his words verbatim, it will be sufficient and the stenographer will not be a superior witness. Following Bennett v. State, 32 Texas Crim. Rep., 216, and other cases.

**4.—Same—Property Recently Stolen—Explanation—Charge of Court.**

Where, upon trial of theft of a hog, the charge of the court, on recent possession of the alleged stolen property and defendant's explanation thereof, did not submit the facts in evidence, but assumed that defendant was in possession thereof at the time he made such explanation, which in fact he was not, the same was reversible error.

**5.—Same—Original Taking—Charge of Court.**

Where, upon trial of theft of a hog, there was a question raised by the evidence as to whether defendant participated in the original taking of the hog and was, therefore, not a principal, this issue should have been pertinently and affirmatively submitted to the jury.

**6.—Same—Mistake—Charge of Court.**

Where, upon trial of theft of a hog, there was evidence that if defendant took the hog, he did so through mistake, this issue should have been submitted affirmatively to the jury as requested.

**7.—Same—Evidence—Instituting Proceedings.**

Upon trial of theft of a hog, it was reversible error to admit in evidence testimony that the defendant had never made any attempt to recover the hog or institute any legal proceedings therefor. Following Elkins v. State, 59 Texas Crim. Rep., 157, and other cases. Prendergast, Presiding Judge, dissenting.

Appeal from the District Court of Wheeler.    Tried below before the Hon. L. C. Barrett, Special Judge.

Appeal from a conviction of theft of a hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Willis & Willis* and *J. C. Dial*, for appellant.—On question of reproduction of testimony:    Simms v. State, 10 Texas Crim. App., 131; 16 Cyc., 1102; Underhill on Criminal Evidence, p. 323, sec. 266, and cases cited in opinion.

On question that stenographer's notes is best evidence:    Simpson v. Edens, 14 Texas Civ. App., 235; 16 Cyc., 1108; Underhill on Criminal Evidence, p. 225, sec. 267, and cases cited in opinion.

On question of recent possession and explanation; Pollard v. State, 33 Texas Crim. Rep., 197; Hopperwood v. State, 39 id., 15; Branch's Crim. Law, sec. 796; McKnight v. State, 156 S. W. Rep., 1188; Smith v. State, 44 Texas Crim. Rep., 81; Stewart v. State, 153 S. W. Rep., 1150.

On question of court's charge on original taking:    Burdett v. State, 51 Texas Crim. Rep., 345; Jones v. State, 57 id., 144; Branch's Crim. Law, secs. 810-817.

On question of instituting legal proceedings:    Branch's Crim. Law, sec. 323, and cases cited in opinion.

On question of failure to present defensive theory:    Darnell v. State, 63 S. W. Rep., 631.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Judge.—Appellant was indicted in Roberts County for the theft of a hog. The case was transferred on change of venue to Wheeler County, where this conviction was had.

Appellant moved to dismiss his case from the docket in Wheeler County for want of jurisdiction, alleging as reasons that the indictment was originally returned in the District Court of Roberts County, which court had jurisdiction, and that no transcript appears on file in Wheeler County District Court of all the orders made in that District Court as required by the statute; that among the papers of the case there appeared a bond executed by defendant and sureties for his appearance before

the District Court of Roberts County as required by the statute; that since making that bond appellant has not been surrendered to the custody of the sheriff of Roberts County, but has remained out on said bond, at large; that he has never entered into any recognizance to appear in the District Court of Wheeler County, and no order was ever entered in the District Court of Roberts County ordering the defendant to be removed from Roberts County and delivered into the custody of the sheriff of Wheeler County, and defendant was never so delivered into the custody of the sheriff of Wheeler County. This was, in substance, the motion. The district attorney agreed and admitted in open court that the defendant had never been recognized to make his appearance before the District Court of Wheeler County, and that he had never been remanded or delivered into the custody of the sheriff of Wheeler County by the District Court of Roberts County; that there appeared cn file in the papers of said cause a bond duly executed by the defendant and his sureties requiring him to appear before the District Court of Roberts County as required by law; that since the making of said bond defendant had never been surrendered to the sheriff of Roberts County, but has remained out on said bond; that no order was ever made by the District Court of Roberts County fixing any recognizance or ordering the defendant to be removed from Roberts County and delivered to the custody of the sheriff of Wheeler County, and appellant was never so delivered into the custody of the sheriff of Wheeler County. Whereupon the court overruled said motion and required the defendant to stand trial in the District Court of Wheeler County, to which action he reserved exceptions, etc. The district judge who tried the case approved this bill of exceptions, in substance, with the following qualification: "On the trial of the cause and on the trial of the motion the clerk of the District Court testified that there had been on file among the papers of the cause a transcript of all the orders from the District Court of Roberts County in said cause, and that among the same and in the same was an order changing the venue from Roberts County to Wheeler County, but that said transcript had been mislaid and it was then agreed among the attorneys for both State and the defendant that they send to Roberts County where this indictment was first returned, and where the trial was had the first time in the cause and get the order or a certified copy of it, changing the venue from Roberts County to Wheeler County, and further agreed that there should be a substitute for the order changing the venue, and the attorneys for both the State and the defendant agreed that there was an order entered changing the venue to Wheeler County before the case was first tried in Wheeler County and when the papers were first brought, and the court finds that when the papers were first sent from Wheeler County a transcript of all the orders on the docket in the cause in Roberts County regularly certified to, including the order changing the venue to Wheeler County, was sent to said Wheeler County, and that the venue was regularly changed, with

the exception of the defendants below named in the recognizance, and the court further finds on the testimony of the attorneys in the cause that it was agreed between the defendants after the court in Roberts County had decided to change the cause to Wheeler County; and the court further finds from the testimony introduced on the trial of said cause and this motion that there had been two or more continuances in said cause after the venue had been changed to Wheeler County, and that the cause had been once tried in Wheeler County after said change of venue, and no objection had been made to the jurisdiction of the court until this cause came up for trial at this term, and the court finds that the venue was regularly changed from Roberts County to Wheeler County, with the exception that the defendant was neither ordered into the custody of the sheriff of Wheeler County nor was he required to enter into a recognizance by said order changing the venue, which order as a part of the record is hereto referred to in the transcript and made a part hereof, and that the venue notwithstanding said defects was changed to Wheeler County, and that the defendant by voluntarily appearing and submitting himself to the jurisdiction of Wheeler County, and being tried once before this term in Wheeler County, giving bond, etc., and entering into a trial in Wheeler County at a former term without any objection to the order of changing the venue, before the present term of this court had waived the defects in the order changing the venue and that, therefore, this court, under the circumstances, had jurisdiction."

The statute, article 637, Revised Code of Criminal Procedure, provides that when a change of venue is ordered and defendant is on bail, he shall be required to enter into recognizance forthwith conditioned for his appearance before the proper court at the next succeeding term thereof, or if the court of the county to which the cause is taken be then in session, he shall be recognized to appear before said court on a day fixed, and from day to day and term to term thereafter until discharged. Article 638 provides that if defendant fails to give recognizance he shall be placed in custody and kept by the sheriff to be disposed of as provided in articles 639 and 640. These relate only to the defendant when he is in custody. Appellant was not in custody in Roberts County, but was on bond, and the facts show, as stated in the bill of exceptions above quoted as well as in the qualification of the trial judge, that appellant, as a matter of fact, did not enter into recognizance in Roberts County when the change of venue was ordered to Wheeler County. The statute requires this to be done; and it would seem by its terms Wheeler County could not obtain jurisdiction of appellant until the law had been complied with. We have been unable to find but one case construing this statute, and this is State v. Butler, in 38 Texas, 560. That court sustains the contention of appellant. Among other things, this language is found in that opinion: "An order transferring a criminal case to another county does not transfer the jurisdiction unless the defendant be recognized to appear before the court to which the venue

is changed." The judge seems to have arrived at the conclusion that because appellant had at a prior term of the court appeared in Wheeler County, therefore he had waived the failure of the court in Roberts County to put him under recognizance. Under the statute the learned judge is in error. The statute is emphatic that the party must either enter into a recognizance or go to the custody of the sheriff of the county from which the change of venue is had, and until this has been done the county to which the change of venue is had does not acquire jurisdiction. This might be sufficient to dispose of the case, so far as this appeal is concerned, but in view of the fact that the proper change of venue may be had, there are some questions that we will notice.

At a prior trial of this case appellant's father, C. C. Harris, testified to very material facts. He was not in attendance at the trial which resulted in this conviction. The reason for his non-attendance was his infirm condition and inability to testify even if he was at court. He had received the second stroke of paralysis and was not in sufficient health or physical condition to attend court, and the predicate shows that he would not be able to answer questions were he present. With this showing the court should have admitted the testimony of Dial, who was offered to reproduce the testimony of the absent witness. It will be noted the absent witness was a defense, not a State's, witness. The Constitution provides that the accused shall be confronted by the witnesses against him. The defense witnesses are not included in this inhibition of the Constitution. It is not the purpose here to discuss any of the questions involved in the reproduction of the testimony on the part of the State, and what may be said here has no reference to that phase of the law. But under the showing made it seems that appellant was entitled to the reproduction of the evidence of this witness. The predicate was ample and the testimony was material. The State's theory was that appellant committed the theft of McCauley's hog, and the indictment so averred. The State used McCauley and such other testimony as could be obtained to support the allegations in the indictment. Appellant's theory of the case was that the hog belonged to his father, and that his father had authorized himself and A. O. B. Kidd to take up this hog. To be more particular, the father of appellant, the absent witness, had forty or fifty head of hogs; four of them were missing. Appellant, son of the absent witness, and Kidd were authorized by the absent witness to gather these four hogs, and for this service they were to have one of the four under that authority, and it was claimed Kidd got this hog. Appellant sold or assisted Kidd in selling the hog to Bessler. Kidd being indicted for the same transaction, could not testify. Appellant, therefore, was relegated to his own testimony in the absence of his father's to support his theory of the case. His father had previously testified to the state of facts claimed by appellant to be true. The court excluded this testimony, because he thought the stenographer's notes were superior evidence to the reproduction of the testimony by the witness Dial, who heard the absent witness testify, and

it would seem also that the court further ruled against appellant's con-
tention because Dial could not reproduce everything or practically every-
thing the absent witness had stated.   It is shown in the bill of excep-
tions that he could reproduce all the material matter testified by Harris,
the absent witness, but that he could not reproduce, in the language of
the absent witness, everything he said in regard to the case; but it was
made clear he could reproduce substantially all the material facts.   The
stenographer's notes could not be introduced in evidence unless they
had been transcribed so they could be read and shown to have been cor-
rect under the rules laid down in Stringfellow's case, 42 Texas Crim.
Rep., 588, and Smith v. State, 60 Texas Crim. Rep., 293.   But even
then the stenographer's notes would not be superior to the evidence of
any other witness who could testify to the same facts.   The court's idea
that Dial's reproduction of the testimony would be secondary is not in
accordance with the law.   If the stenographer had his notes with him
and was offered as a witness, he might, by showing that the notes were
correct, testify as to what the notes contained.   But that matter is
unnecessary here to be discussed, as that question was fairly well dis-
cussed in the Stringfellow case and Smith case, supra, but that did not
prevent the defendant from reproducing the testimony by any other
witness who heard and could testify to the facts.   The stenographer
would not be a superior witness, nor would his testimony be primary.
There are no degrees in secondary evidence under the decisions of this
State.   This has been settled, it seems, in Texas since Lewis v. San
Antonio, 7 Texas, 288.   If the witness could testify to the material
facts in the case substantially what the witness testified without giving
his words verbatim, it would be sufficient under the decisions.   We
deem it unnecessary to cite these cases; however, we cite Bennett v.
State, 32 Texas Crim. Rep., 216; Pratt v. State, 53 Texas Crim. Rep.,
281; vol. 16, Cyc., 1102; Underhill on Crim. Ev., sec. 266; 1 Greenl.
on Ev., sec. 165.

The court charged the jury:   "You are instructed that if you believe
from the evidence in this case that the property alleged to have been
stolen was so stolen and recently thereafter was found in the possession
of defendant and that the defendant when thus found in the possession
of the same gave an explanation of his said possession which appears
reasonably and probably true, then before you would be warranted in
finding a verdict of guilty in this case you must be satisfied from the
evidence beyond a reasonable doubt that the other testimony in this case
establishes the falsity of the explanation so made by the defendant.
And if the State has failed to satisfy you that such explanation was
false, then you will acquit the defendant.   But in this connection I
further instruct you that the State is not bound to prove the falsity of
the defendant's explanation by direct or positive testimony, but that
the same may be shown to be false by any evidence sufficient to satisfy
your minds that it was false."   Many objections are urged to this charge.
This form of charge has been so often held fatally defective it would

hardly seem to need discussion at this late date. Almost the identical charge was held error in Hopperwood v. State, 39 Texas Crim. Rep., 15. The reasons are given in the Hopperwood and quite a number of other cases, which will be cited below. The matters were fully discussed, and thoroughly adjudicated in those cases, and the writer does not think it necessary to go over those reasons, but we cite some of the cases: Pollard v. State, 33 Texas Crim. Rep., 197; for a collation of a great many authorities, see Branch's Crim. Law, sec. 796; Wheeler v. State, 34 Texas Crim. Rep., 350; Hays v. State, 36 Texas Crim. Rep., 146; Franks v. State, 36 Texas Crim. Rep., 149; Spillman v. State, 38 Texas Crim. Rep., 607; Ballow v. State, 69 S. W. Rep., 513; McCullough v. State, 71 S. W. Rep., 278; Stewart v. State, 77 S. W. Rep., 791; Gilford v. State, 48 Texas Crim. Rep., 312; Lee v. State, 57 Texas Crim. Rep., 177. In Wheeler v. State, supra, Judge Henderson undertook to prescribe a form where it was necessary to charge this phase of the law. In that case a charge much similar to the one given in this case was condemned and the judgment reversed because such charge was given. It will be noticed in the reading of the charge that the court gave it with reference to explanation given by defendant when found in possession of the hog. The account given was at Bessler's house, where defendant stated he had gotten the hog in a trade from some person who was going through the country traveling. Appellant was not then in possession of the hog, at least was not at the place where the conversation was had, and it was the next day perhaps when appellant delivered the hog. The evidence all the way through undertook to show or raise the question there may have been two hogs involved, but be that as it may, appellant was not then in possession of the hog; he had not been accused of stealing any hog. In talking to Bessler he stated to him that he had a hog that he got from somebody going through the country and wanted to sell it to him. They did not then make the trade, but subsequently did make a trade with reference to the hog. We are led to believe this charge was given with reference to this particular conversation, and if this is true the court was in error in including in his charge the idea that the explanation was given when appellant was found in possession of the hog. Bessler had no idea at the time he was purchasing a stolen hog, nor was appellant in any way directly or indirectly charged with stealing any hog. If a charge on recent possession is given in another trial, it should be in accordance with the facts stated and not assume that appellant was in possession of a stolen hog, when as a matter of fact there was no hog present, and there was no question of theft at the time. If appellant bought the hog, as he said he did, of course he did not commit theft of it. That phase of it perhaps was sufficiently charged by the court. The court did charge the jury if the hog was the property of C. C. Harris at the time of the alleged taking, or if defendant so believed, or if the jury had a reasonable doubt of either question, they would acquit. Appellant claimed to have gotten the hog from his father, and the hog be-

longed to him. So that charge of the court was not in accord with the facts when presenting that issue. The court's charge on recent possession was, therefore, error.

There are some other questions with reference to charges given and refused, which will be noticed in a general way. The issue is raised by the testimony of the defendant that he did not participate in the taking or original capture of the hog. In this respect the substance of the evidence is about this way: Appellant was living at Kidd's, and while there one evening cutting stove wood for Mrs. Kidd, Kidd came home driving a hog. He asked defendant to open the gate to the lot so he might drive in the hog. Appellant did this. The hog was turned into the pen. The jury should have been pertinently and affirmatively charged that unless appellant was connected with the original taking as the statute provides, they could not convict him of theft. If the hog Kidd brought home was stolen and the hog in question, then before appellant could be convicted as a principal he must be shown to have been connected with the original capture, and the jury have been definitely and affirmatively informed. If his testimony of his connection with the animal was true, he was not a principal, even if the hog was stolen and belonged to McCauley. Appellant swore the hog belonged to his father, but if that issue should be decided adversely to him still he had the legal right to have the other question decided by the jury under appropriate instructions, that is, he must be a principal in order to sustain a conviction under this indictment. This question was raised in the charges requested.

There is another question, that if the hog was taken through mistake, even if appellant was a principal in the taking, yet he could not be convicted if he believed at the time he took it that it belonged to his father, and that he had a right to take it under the authority given him by his father. In other words, the law in regard to mistake of fact should have been definitely and affirmatively given the jury. A requested instruction was refused submitting this issue.

A bill of exceptions recites that while McCauley was testifying for the State the district attorney asked him whether or not defendant had ever made any attempt to institute any proceedings for the purpose of recovering the hog. Appellant raised quite a number of objections, and the witness answered that the defendant had never made any attempt to recover the hog, or instituted any legal proceedings therefor. This was not criminative facts against appellant, and could not be used as criminative. Morton v. State, 43 Texas Crim. Rep., 533; Elkins v. State, 59 Texas Crim. Rep., 157. The Elkins case seems to be very much in point. That judgment was reversed because of the testimony that the daughter of defendant had never instituted civil proceedings to recover the alleged burglarized property. See also Richards v. State, 59 Texas Crim. Rep., 203.

Another bill of exceptions shows that while defendant was testifying in his own behalf he was required, over objection, to testify at the in-

stance of the State, that he had not instituted legal proceedings, or proceedings of any sort to recover the hog. This is the same question above · discussed.

This, perhaps, is a sufficient discussion of the case in order to indicate to the trial judge the views we entertain in regard to how it should be tried. In disposing of these matters we have not taken up all the questions presented, because they are numerous, but a general outline of the questions suggested, we think, are sufficiently treated to indicate to the court how the case should be tried.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE (dissenting).—I can not agree to that part of the decision of the court holding that because appellant was not required to enter into a recognizance when the venue of his case was changed from Roberts to Wheeler County, and that his subsequent appearance and trial twice in Wheeler County after change of venue, did not give Wheeler County District Court complete jurisdiction of him and his case.

1. I am thoroughly convinced that the holding of the lower court that the Wheeler County District Court had jurisdiction was correct.

The Constitution, article 3, section 45, expressly confers on the court power and authority to change the venue, to be exercised in such manner as shall be provided by law, and requires the Legislature to pass such legislation. The Legislature complied with this constitutional provision. C. C. P., arts. 626 to 641, inclusive.

The order of the judge of. the Roberts County District Court is full, clear and explicit changing the venue to Wheeler County, and, the order shows, was expressly agreed to be sent there by both the appellant and his attorneys at the time. Article 634, Code of Criminal Procedure, is, the order of the judge granting a change of venue *shall not be revised upon appeal* unless the facts upon which the same was based are presented in a bill of exceptions prepared, signed, approved and filed at the term of the court at which such order was made. There was no such bill in this case, and no pretense that there was. Besides, in obedience to the order changing the venue appellant promptly and repeatedly appeared in the Wheeler County District Court and stood at least one trial without in any way questioning the order changing the venue. If he had failed to appear, or the officer had discovered he had not entered into recognizance a capias could have been issued by the Wheeler County District Court, and he arrested, and held for bail, the same as if he had been indicted in that county in the first instance.

It is true that article 637, Code of Criminal Procedure, provides that when a change of venue is ordered, and the defendant is on bail, as he was in this instance, he shall be required forthwith to enter into recognizance, conditioned for his appearance before the court to which the change is ordered. But the fact that the judge did, or did not, do this,

in no way, in my opinion, invalidates the order changing the venue. The order changing the venue, as stated above, is positive, clear and explicit, and was agreed to by appellant and his attorneys, and was in no way conditioned upon his entering into recognizance. I would not be understood as intimating that the judge should not have required this. The judge should have complied with this statute. But what I am holding is, that even if he did not, his failure did not affect the order changing the venue and thereby giving to the Wheeler County District Court full and complete jurisdiction of the case. The only object in requiring this new recognizance is that defendant shall appear before the court to which the venue is changed; not that such recognizance is a prerequisite to the power and authority to change the venue. In this instance the defendant did, in obedience to the order changing the venue, duly and repeatedly appear before the court and stand his trial. This is all the recognizance could possibly have effected, or been good for. Suppose he had never been arrested, or made any kind of bail, or entered into any recognizance at all, that would not in any way have prevented the court having jurisdiction of his case; neither arrest nor bail, nor both, nor want of either, or both, can affect the jurisdiction of the court. Arrest and bail are simply the means of getting and keeping the defendant before the court to stand his trial. Everything requisite, so far as jurisdiction is concerned, has been as fully and completely accomplished as if he had been arrested many times and entered into any number of bail bonds or recognizances. In other words, the right and power to change the venue, and the order doing so, is in no way dependent upon the defendant entering into a new recognizance, nor upon the judge so requiring at the time. It is merely an incident to the change of venue. To hold otherwise, it seems to me, would be holding the shadow superior to the substance.

The case of State v. Butler, 38 Texas, 560, decided by the old *semicolon* Supreme Court, and cited in the opinion as authority, is not in point, and should not be construed as supporting the court's opinion in this case. The report of the case clearly shows that the appellant therein was indicted in Smith County in 1861; that the district judge of that county, *being disqualified to try the case because he had been of counsel for the defendant,* in 1868, made an order transferring it to Rusk County, and the original papers were sent to Rusk County. In 1872 the District Court of Rusk County ordered the papers returned to Smith County because the Rusk County District Court had no jurisdiction, and the papers were so returned. The Constitution in force when the disqualified judge made the first order transferring the case from Smith to Rusk County, as well as every other Constitution of Texas, prohibited such disqualified judge from making *any order* in a case when he had been of counsel. Hence, his order was *void,* not merely voidable, and had no effect whatever. Constitution of 1845, art. 4, sec. 13; Amend. 1866, art. 4, sec. 12; Constitution of 1869, art. 5, sec. 11; Constitution of 1876, art. 5, sec. 11; Garrett v. Gaines, 6 Texas, 435; Chambers v.

Hodges, 23 Texas, 105; Gains v. Barr, 60 Texas, 676. So the original transfer having been absolutely void, the Smith County District Court was never deprived of jurisdiction, and the Rusk County District Court never acquired any jurisdiction.

2. I do not agree, also, to that part of the opinion holding, in effect, that the State could not prove appellant had instituted no proceedings to recover the hog taken from his vendee and in effect from him, and for which he said he repaid his vendee the amount his vendee had paid him therefor. The opinion cites Morton v. State, 43 Texas Crim. Rep., 533, and Elkins v. State, 59 Texas Crim. Rep., 157. The Elkins' case, particularly cited as in point, in my opinion, is clearly not in point. That case correctly holds that the fact that a third party has not sued another party for property, the right to which is in dispute between them, can not be introduced against an accused who was neither of these parties, nor the vendee nor vendor of either of them. Neither is the Richards case cited in any way in point, and certainly the Morton case is not. The acts, or failure to act, of an accused, when the circumstances call for action on his part if incriminating, are always admissible against him.

3. I concur in the disposition of the case on some of the other points decided by the opinion of the court.