RODERICK GATES V. THE STATE.

No. 20765. Delivered June 26, 1940.
Rehearing Denied October 23, 1940.
Request for Leave to File Second Motion for Rehearing Denied (Without Written Opinion) November 6, 1940.

230

The opinion states the case.

*Joe Ed Winfree, Sr.*, of Houston, W. S. Poston, of Groveton, and *S. F. Hill*, of Houston, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

The offense is murder; the punishment assessed is confinement in the State penitentiary for a term of twenty-five years.

The record shows that the homicide occurred at a beer tavern in Trinity County, Texas. It appears that the deceased had imbibed rather freely of both whisky and beer. He had

knocked one person down and when appellant went to quell the disturbance a difficulty arose which resulted in the killing. Appellant admitted the killing but contended that his action was in self-defense as the deceased was cutting him with a knife. This issue was very hotly contested.

Appellant was indicted in Trinity County, Texas, at the February Term, 1938. The case was transferred by change of venue to the district court of Walker County, and was by that court, on its own motion, transferred to the district court of Polk County, Texas.

Appellant's first contention is that the court erred in overruling his motion questioning the jurisdiction of the district court of Polk County. He offered no proof in support of his motion, but insists that the order transferring the cause from Walker to Polk County is void on its face for several reasons: (1) That the order states no legal reason for a change of venue; (2) that the defendant not being present in court at the time the venue was changed from Walker County, and this being a capital case, the order is void; (3) that the defendant voluntarily submitted himself to the jurisdiction of the court in Polk County, and was neither placed in jail in Walker County nor entered into recognizance in Walker County as the order changing the venue directed.

Appellant's contention that the order states no legal reason for a change of venue is without merit. The cause was transferred from Walker County to Polk County on the court's own motion as provided by Art. 560, C. C. P. This article provides that: "Whenever in any case of felony the judge presiding shall be satisfied that a trial, alike fair and impartial to the accused and to the State, can not, from any cause, be had in the county in which the case is pending, he may, upon his own motion, order a change of venue to any county in his own, or in an adjoining district, stating in his order the grounds for such change of venue."

In the instant case while the order of the trial judge does not follow the exact language of the statute in stating that a trial, alike fair and impartial to the accused and the State could not be had in Walker County, it does state facts to support a conclusion that both the defendant and the State could get a fairer and better trial in Polk County than would be possible in Walker County. At any rate, the appellant introduced no facts to show that the trial judge abused his discretion in this respect and to overturn the presumption that he did his

duty. It is our understanding that the revision upon appeal of such an order as was here made can only be had where it is shown that the rights of the accused have been materially prejudiced by the action of the court in changing the venue. See Rothschild v. State, 7 Crim. App. 519; Bohannon v. State, 14 Tex. Crim. App. 271; Henderson v. State, 104 Texas Crim. Rep. 506; Norwood v. State, 116 Texas Crim. Rep. 283, 34 S. W. (2d) 590; Parrish v. State, 134 Texas Crim. Rep. 545, 116 S. W. (2d) 706. Having introduced no facts to support his contention, the presumption obtains that the trial judge acted in accordance with the statute.

The defendant's contention that the order made by the Judge in Walker County was void, as he was not present in court at that time, is also without merit. It appears from the record that he was ill at the time. This question has been passed on before by this court. In Phipps v. State, 100 Texas Crim. Rep. 607, 272 S. W. 209, this court held that in preliminary matters of this nature, occurring before the actual trial, it was not necessary that a defendant be present. See Rothschild v. State, 7 Texas Crim. App. 519.

Appellant's complaint because the record indicates that he neither entered into a recognizance nor was placed in jail in Walker County as directed by the order changing the venue from Walker County to Polk County, and that this order thus shows itself to be void, is untenable. The record does seem to indicate that appellant *surrendered* himself to the jurisdiction of the court in Polk County, but we do not think appellant can now be heard to complain that the order was void because it was not obeyed in these directory matters. Appellant relies in his contention on language appearing in the case of Harris v. State, 160 S. W. 447. That case, however, was explained and qualified in the case of Haley v. State, 288 S. W. 208. It is made to appear in the Haley case that neither of these things are a condition precedent to the jurisdiction of the court trying the case. As stated by Judge Hawkins on motion for rehearing:

"Presuming the order of the court changing the venue to be regular and for good cause, then to say that the execution or nonexecution of a recognizance would have anything to do with conferring a right to try him in the new forum seems illogical, because *that right already existed by virtue of the order, and the subsequent articles are directory as to how his presence in the new forum is assured.*"

By bill of exceptions No. 10 appellant complains of the following remarks by a private prosecutor in his closing address before the jury: "I guarantee you Harry Diminge is one of the best officer witnesses I have ever seen."

Diminge was one of the State's witnesses, and appeared to be a peace officer. It was appellant's contention that the deceased had a knife with which he cut appellant's jacket at the time deceased was killed, and appellant's jacket with numerous cuts therein was exhibited before the jury, and it was claimed that such cuts were in the jacket at the time appellant was arrested by the officers, among whom was Diminge, who testified, along with others who gave like testimony, that there were no cuts in such jacket at the time of appellant's arrest.

There had not been any effort to impeach the witness Diminge, and of course no testimony relative to his excellence as a witness nor to his truthfulness was admissible. Upon an objection to this complained of statement the court promptly instructed the jury to disregard the same; however the appellant reserved a bill of exceptions to the making of the statement. It is not every objectionable statement not borne out by the record that will result in a reversal of a case. It will be observed herein that the prosecutor merely stated that Diminge was one of the *best* officer witnesses he had ever seen,—not that he was the most truthful, not that his testimony was credible, and should be believed under oath, and it is not shown that such prosecutor claimed to know any more, nor saw any more than the jury might have known or seen from their observation of this witness while on the stand. There is naught to show that this remark was not based upon the witness' demeanor while on the stand, and we note that the trial court very promptly upon objection instructed the jury to disregard such remarks. We are cited to the Jones case, 91 S. W. (2d) 342, in which the prosecutor said to the jury in argument, speaking of two peace officer-witnesses for the State: "These men are officers of long years of experience and have rendered faithful service, *and are worthy of belief;* I have worked with them."

In the Thomas case, 109 Texas Crim. Rep. 578, 6 S. W. (2d) 118, the following language was used by the prosecutor: "I known George Norris (State's witness.) I have known him several years, and when he told me that he had bought intoxicating liquor from the defendant I believed him, and still believe him."

This man Norris was the only State's witness to the sale and this court held that such a statement was testimony relative to the witness' character and truthfulness and was error. To the same effect are the objectionable remarks in the Parker case, 64 S. W. (2d) 786, and the Thomas case, supra, and the Parker case were reversed because of such remarks.

There is a further bill of exceptions No. 3 to the remarks of the prosecuting attorney made in the closing argument herein, as follows: "Dolph Zachary has been as busy as a dirt dobber all day around this court house. He is a henchman of Joe Ed. Winfrey."

Mr. Winfrey was an attorney for the appellant, and the trial court's qualification to this bill shows that Zachary was a witness for the appellant "and had been present throughout the trial of the case, being both in and out of the court room at recess time talking with counsel for the defendant and said witness being referred to in the argument of Mr. Foreman as having an interest in the case as shown by his activities. Upon objection being made to said argument the court instructed the jury to disregard the same, and not consider it for any purpose."

The fact that Mr. Zachary had been as busy as a dirt dauber all day around the court house does not seem to us to be such a serious reflection on anyone that it could not be removed by the trial court's prompt instruction to the jury. As to the latter part thereof, that is: "He is a henchman of Joe Ed Winfrey," it is necessary for us to go outside the definition of the word "henchman" in the dictionary in order to find any reflection on anyone in such statement. Mr. Webster in his International Dictionary says the word means "An attendant, a servant, a follower; now chiefly used as a political cant term." If such a term has any sinister meaning such is not found in this dictionary. Surely the statement that Zachary was a henchman of Mr. Winfrey did not operate to damage Zachary before the jury, nor did it discredit his testimony, for he gave none on the trial. That he was an attendant, a servant or follower of Mr. Winfrey we do not think operated to Mr. Winfrey's discredit. True it is that Mr. Winfrey was an attorney for appellant and actively engaged in the trial of this case, well known surely in that community as well as throughout that portion of the State, and a person of such known probity and honor that a mere reference to a person as his henchman could not have been such a serious reflection upon the high character of Mr. Winfrey that same would militate against appellant to such an

extent that it could not be removed by the trial court's instruction to disregard the reference thereto.

We are aware of the holding in the Kentucky case of Herald Publishing Co., et al v. Feltner, 164 S. W. 370; 158 Ky. 35, by the Court of Appeals of that State wherein it was held that the publication of a statement that the plaintiff was a "henchman" of one Hargis, who was a person of notoriously bad character, a fugitive from justice, and an outcast,—was a libeling of the plaintiff Feltner by implying that Feltner was ready to do the work of this man Hargis, although unlawful. In that instance it was first necessary to connect the supposed "henchman" up with the Breathitt County feudist Hargis, and after such connection the offensive inference that was objected to applied to one who was denominated a "henchman" and not to the one whom he was supposed to be associated with as a henchman. It is also to be noticed that the phrase complained of must of necessity be connected with one of notoriously bad character, and instead we find such herein connected with a reputable attorney, engaged in the proper practice of his profession, and under the circumstances we see no reason to say that a statement that Zachary was an attendant, a servant, a follower of Mr. Winfrey would shed any degree of odium upon either of them. We do not think such error is evidenced by such remarks that could not be removed by the trial court's prompt instruction.

Appellant also complains of the court's action in declining to sustain his application for a change of venue. This application was not supported by two compurgators as required by law. Hence it might not be considered. He now contends that he interviewed a number of citizens of Polk County who told him they knew appellant could not get a fair and impartial trial in said county, but that they (the citizens) could not afford to verify the application because the deceased and his widow had too many influential friends and relatives in the county. That he offered to make proof thereof, but the court declined to hear the proof. The bill fails to disclose such state of facts. If the facts existed as he now contends, he should have set them up in his motion and if he offered proof relative thereto and the court declined to hear the evidence, then it should have been brought forward by a proper bill of exceptions.

We have examined all further bills of exception and see no error reflected therein.

The judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

In his motion for rehearing appellant reiterates his contention that the district court of Polk County was without jurisdiction to proceed with the trial. It is appellant's position that the order of the district court of Walker County changing the venue to Polk County is void, in that it fails to state that the judge was of the opinion that a trial, alike fair and impartial to appellant and the state, could not be had in Walker County. The change of venue to Polk County was upon the court's own motion. Article 560, C. C. P., reads as follows: "Whenever in any case of felony the judge presiding shall be satisfied that a trial, alike fair and impartial to the accused and to the State, can not, from any cause, be had in the county in which the case is pending, he may, upon his own motion, order a change of venue to any county in his own, or in an adjoining district, stating in his order the grounds for such change of venue."

It does not appear that appellant questioned the sufficiency of the order of transfer until he filed his motion for new trial. It is true that he filed a written protest against a trial in Polk County and embraced therein the order changing the venue to such county. However, the reasons asserted by appellant in support of his contention that the case should not be tried in Polk County were that the transfer "was voidable, irregular, unfair, and against good practice, and against the public policy of this State"; that the transfer was made for the purpose of imposing an "extra and added punishment of this defendant"; that such transfer was made because the appellant was ill at the time the case was set for trial in Walker County and was preparing to seek a continuance; that the action of the district judge of Walker County in transferring the case on his own motion without attempting to get a jury was arbitrary. Appellant failed to point out in his protest that the order changing the venue embraced no statement that the judge of the district court of Walker County was satisfied that a trial, alike fair and impartial to appellant and to the State, could not be had in Walker County. As already pointed out, no specific contention was made that the order of transfer failed to comply with the provisions of Article 560, supra, until the motion for new trial was filed and presented. The complaint came too late.

The order of transfer was not void notwithstanding its failure to embrace a statement to the effect that the judge of

Walker County was satisfied that a trial, alike fair and impartial to appellant and to the State, could not be had in Walker County. Baker v. State, 220 S. W. 326. As said in Baker's Case: "The court having power granted by the Constitution to change the venue, its failure to observe the legislative regulations requiring that the reason for the change be embraced in the order would not vitiate the order, in the absence of an abuse of discretion, which, to receive attention on appeal, would have to appear in some authentic form, recognized by law, so that this court would know that there was an abuse of discretion. In the absence of some authentic information to the contrary, the presumption that the court did not transcend its authority obtains * * *." The order not being void, it follows that, under the circumstances reflected by the record, the district court of Polk County was not without jurisdiction to proceed with the trial. See Taylor v. State, 197 S. W. 201.

Appellant reiterates his contention that the district court of Polk County was without jurisdiction because of the fact that the order of transfer failed to show the proper reasons for not changing the venue to one of the counties adjoining Walker County. It is observed that under Article 560, supra, when the venue is changed upon the court's own motion the court is authorized to transfer the case to any county "in his own, or in an adjoining district." If we comprehend the record, appellant failed to make the contention now under consideration until he filed and presented his motion for new trial. This was too late. Under the circumstances, the district court of Polk County was not without jurisdiction. See Taylor v. State, supra.

Appellant renews his contention that bill of exception No. 8 reflects reversible error. It is observed from the bill that appellant filed an application for a change of venue but failed to procure the affidavits of compurgators; that when the case was called for trial appellant offered to testify to the effect that he had talked to a number of citizens in an effort to obtain compurgators; that these citizens had stated to him that they did not believe he could obtain a fair and impartial trial in Polk County but that they were unwilling to sign as compurgators in view of the prominence of deceased's relatives living in Polk County. The court declined to permit appellant to give such testimony and apparently sustained the State's exception to the application for a change of venue. Under the decisions of this court the bill of exception fails to reflect error. In Sanchez v. State, 236 S. W. 734, this court said: "A motion to change the venue upon the ground of prejudice was prepared and sworn to by the appel-

238

lant, but compurgators were not obtainable. These were essential to require its consideration as an application upon the part of the appellant." We quote from Gibson v. State, 110 S. W. 41: "It has even been held that, where there was filed an affidavit alleging the existence of so great a prejudice in the county against him as to prevent a fair trial, but that persons could not be induced to make affidavit of such prejudice, and defendant asked for process for certain persons, residents of the county, who, affiant believed, would testify to the existence of such prejudice, the application did not comply with the statute. Mitchell v. State, 43 Tex. 512; Wall v. State, 18 Tex. 683, 70 Am. Dec. 302. This question was fully considered in the case of Willis Maclin v. State (decided at the recent Dallas term) 109 S. W. 145, where we reached the same conclusion and made the same holding."

After carefully considering all other complaints set forth in the motion for rehearing, we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.